1  MICHELE SABO ASSAYAG, SBN 109540
   JOSHUA K. PARTINGTON, SBN 275939
2  ASSAYAG ❖ MAUSS
   A Limited Liability Partnership
3  2915 Red Hill Avenue, Suite A200
   Costa Mesa, California 92626
4  Telephone: (714) 427-6800
   Fax: (714) 427-6888
5
6  Attorneys for Plaintiff,
   BANK OF AMERICA, N.A.

7

8              UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11 In re                          ) Case No. 1:19-bk-12320-VK
                                   )
12   MIHIR SHAH,                   ) Adversary Case No.
                                   )
13           DEBTOR.               ) ASSIGNED TO THE HONORABLE
                                   ) VICTORIA S. KAUFMAN
14 _____ )
                                   ) (Chapter 7 Proceeding)
15 BANK OF AMERICA, N.A.,          )
                                   )
16           PLAINTIFF,            ) **COMPLAINT TO DETERMINE NON-**
                                   ) **DISCHARGEABILITY OF DEBT**
17      vs.                        )
                                   ) **[11 U.S.C. § 523(a)(2)(B)]**
18 MIHIR SHAH,                     )
                                   )
19           DEFENDANT.            )
                                   )
20 _____ )

21

22        Plaintiff, BANK OF AMERICA, N.A. ("Lender," "Bank" or "Plaintiff"), alleges as

23 follows:

24

25               **JURISDICTION AND VENUE**

26

27        1.      By this Complaint, Plaintiff initiates an adversary proceeding for a

28 determination of non-dischargeability of debt pursuant to 11 U.S.C. Section 523(a)(2)(B) (hereinafter

                                    -1-

Title 11 of the United States Code shall be referred to as the Bankruptcy Code).  This is a core proceeding under 28 U.S.C. Section 157(b)(2), subpart (I).

2.      This adversary proceeding is one under or arising in the bankruptcy case of <u>In re Mihir Shah</u>, Case No. 1:19-bk-12320-VK, filed under Chapter 7 of the Bankruptcy Code, and presently pending in the United States Bankruptcy Court for the Central District of California (the "Individual Chapter 7 Case").  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 157 and 1334.  Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Court.

3.      Venue of this adversary proceeding is founded upon 28 U.S.C. Sections 1408 and 1409 in that this adversary proceeding is a civil proceeding arising under the Bankruptcy Code or arising in the Individual Chapter 7 Case under the Bankruptcy Code.

4.      The above-entitled court has jurisdiction to hear and finally determine the above-captioned adversary proceeding as to all claims and issues raised therein.

**<u>GENERAL ALLEGATIONS</u>**

5.      On or about February 2, 2017, M Shah Dental Inc., a California corporation ("Borrower") and Plaintiff executed a Loan Agreement ("Loan Agreement"), pursuant to which Plaintiff agreed to loan Borrower $840,000.00 for, among other things, the purchase of a dental business (the "Loan").  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "1" and incorporated herein by this reference.

6.      Plaintiff is a creditor of Debtor, Mihir Shah ("Debtor"), by virtue of a Continuing and Unconditional Guaranty executed by Debtor in favor of Plaintiff on or about February 2, 2017 ("Guaranty").  A true and correct copy of the Guaranty is attached hereto as

Exhibit "2" and is incorporated herein by this reference.  Hereinafter, the Loan Agreement, Guaranty, Credit Application (as defined below) and any other documents executed in connection with or evidencing the Loan, may, hereinafter, be referred to collectively, as the "Loan Documents."

7.    Pursuant to the Loan Documents, Plaintiff extended the Loan to Borrower, which Loan was to be paid through scheduled monthly payments beginning March 2, 2017 and with the final scheduled payment due on February 2, 2032.

8.    Plaintiff agreed to extend the Loan based upon financial information provided by Debtor.  Debtor, in his June 8, 2016 Universal Credit Application ("Credit Application") submitted to Plaintiff, identified $50,000.00 of cash on hand, and $612,000.00 in Real Estate Owned.  Moreover, Debtor identified $582,000.00 in total liabilities, which was entirely comprised of real estate loans.  As such, Debtor represented, on his Credit Application, a net worth of $80,000.00.  A true and correct copy of the Credit Application is attached hereto as Exhibit "3" and is incorporated herein by this reference.

9.    Furthermore, page 1 of the Credit Application includes, under liabilities, a field stating "Installment Account (student loans, etc.)." Debtor did not include any amounts in this field.

10.    Additionally, the Credit Application states that the "person(s) signing below on behalf of the Applicant for loans or other credit from Bank of America, N.A. […] certifies that […] all information submitted in connection with this application for loans or other credit from the Bank is true and correct in all respects."

11.    Relying upon Debtor's representations regarding Debtor's financial condition, specifically the net worth of $80,000.00 and the absence of any liabilities beyond real property secured loans, Plaintiff agreed to extend the Loan to Borrower.

1      12.    Borrower defaulted pursuant to the terms of the Loan Documents no later than

2  September 14, 2019, because, among other things, Borrower filed a Chapter 7 Bankruptcy Petition in

3  the United States Bankruptcy Court for the Central District of California, initiating Case Number

4  1:19-bk-12322-MT (the "Borrower's Chapter 7 Case"), in addition to the filing of the Individual

5  Chapter 7 Case (the "Defaults").

6

7      13.    As of November 12, 2019, Borrower and Debtor, among others, were indebted

8  to Plaintiff under the Loan Documents in the total amount of $714,324.00, which amount was not

9  inclusive of attorneys' fees and costs.

10

11     14.    On or about September 14, 2019, Debtor filed his Chapter 7 Bankruptcy

12  Petition, thereby initiating the Individual Chapter 7 Case (the "Statements and Schedules.").   [Dkt

13  Number 1]

14

15     15.    Debtor's financial condition, as represented in the Statements and Schedules,

16  varies immensely from that which is reflected in the Credit Application.

17

18     16.    Notably, Debtor's Schedule E/F, at paragraphs 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7,

19  4.8, 4.9, 4.10, 4.11, 4.19, 4.20, 4.21 and 4.22, among others, list various student loan debts incurred by

20  Debtor prior to the submission of his Credit Application to Plaintiff.  According to page 27 of the

21  Debtor's Statements and Schedules, Debtor's student loan liabilities total $466,916.00.

22

23     17.    Under oath at the 341(a) Meeting of Creditors in this bankruptcy case, Debtor

24  claimed that the information contained in the Statements and Schedules was true and accurate.

25

26     18.    Plaintiff has not concluded its discovery relating to Debtor's potential omissions

27  and misrepresentations described herein and reserves the right to amend this pleading as Plaintiff's

28  investigation continues.

### SOLE CLAIM FOR RELIEF

**Determination of Dischargeability of Debt Under**

**11 U.S.C. Section 523(a)(2)(B)**

19.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 18, inclusive, as if fully set forth herein.

20.     On or about February 2, 2017, Plaintiff agreed to extend the Loan to Borrower.

21.     Plaintiff is informed and believes and thereon alleges that, based on written information provided by Debtor to Plaintiff, including, but not limited to, the Credit Application, Debtor caused to be made or published, with intent to deceive Plaintiff, materially false statements concerning his financial condition, to induce Plaintiff to continue to extend said financial accommodations to Borrower.

22.     Plaintiff reasonably relied upon Debtor's Credit Application, in extending the Loan to Borrower.

23.     As a direct and proximate result of the wrongful acts alleged herein, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $714,324.00.

24.     Debtor's obligations to Plaintiff, described more fully above, remain unpaid. Because the obligations were largely based on Debtor's misrepresentations, Plaintiff seeks a determination that Debtor's debts to Plaintiff are nondischargeable.

25.     By virtue of the foregoing, Debtor's discharge, as it concerns the Loan and Guaranty, should be denied, pursuant to Section 523(a)(2)(B) of the Bankruptcy Code.

Wherefore, Plaintiff prays for judgment as follows:

### **PRAYER**

1.      That the Court determine, pursuant to Section 523(a)(2)(B) of the Bankruptcy Code, that Debtor's debt to Plaintiff pursuant to the Guaranty be determined to be non-dischargeable;

2.      That Plaintiff be awarded its costs of suit herein; and

3.      For such other and further relief as this Court may deem just and proper.

DATED: December 9, 2019                         ASSAYAG ❖ MAUSS
                                                A Limited Liability Partnership


                                                By: */s/ Joshua K. Partington*
                                                JOSHUA K. PARTINGTON
                                                Attorneys for Plaintiff,
                                                BANK OF AMERICA, N.A.

# Exhibit 1

REDACTED





# Loan Agreement

Date of Agreement: February 2, 2017

| Principal Amount: | $840,000.00 | Account Number: | ▮▮▮375 |
|---|---|---|---|

**Introduction.** This Agreement dated and effective as of February 2, 2017, is entered into between M Shah Dental Inc. (the "Borrower") and Bank of America, N.A. (the "Bank"). The Borrower agrees to the following terms and conditions:

## 1.    LOAN

**1.1    Loan Amount.** The Bank agrees to provide a term loan to the Borrower in the amount of Eight Hundred Forty Thousand and 00/100 Dollars ($840,000.00) (the "Commitment").

**1.2    Availability Period.** The loan is available in one disbursement from the Bank on the date of this Agreement.

**1.3    Interest Rate.**

(a)    Beginning on the date of this Agreement through and including February 1, 2020 the interest rate is 1.89%.

(b)    Beginning on February 2, 2020 through the maturity date of the loan, the interest rate is 4.25%.

**1.4    Repayment Terms.**

(a)    Beginning on the date of this Agreement, the Borrower will repay principal and interest in equal combined installments of Five Thousand Three Hundred Sixty-Three and 03/100 Dollars ($5,363.03) on March 2, 2017 and on the same day of each month thereafter, ending on February 2, 2020.

(b)    Beginning on February 3, 2020, the Borrower will repay principal and interest in equal combined installments of Six Thousand One Hundred Twenty-Nine and 49/100 Dollars ($6,129.49) beginning on March 2, 2020, and on the same day of each month thereafter, and ending on February 2, 2032 the Borrower will repay the remaining principal balance plus any interest then due. Each installment, when paid, will be applied first to the payment of interest accrued. The balance of each installment will be applied to the repayment of principal.

**1.5    Prepayments.**

(a)    The Borrower may not pay off the obligations hereunder in whole during the first sixty (60) months from the last date the proceeds of those obligations were fully disbursed.    Thereafter, the Borrower may pay off those obligations by paying the Bank an amount equal to the then outstanding principal balance, plus accrued interest computed on a simple interest basis and any other sums due the Bank at the time of payoff.    The Borrower is required to contact the Bank's Payoff Department at 1-888-400-9009 to obtain a payoff statement for the obligations hereunder.

(b)    Notwithstanding anything to the contrary herein contained, the Borrower may at any time make payments to the Bank to reduce the principal balance, provided however, that the Borrower agrees it will not tender a payment to reduce the principal balance as a payoff of the entire balance of the credit, unless said payment for payoff of the credit is submitted to the Bank along with a payoff statement obtained by the Borrower from the Bank's Payoff Department.    The Borrower is required to contact the Bank's Payoff Department at 1-888-400-9009 to obtain a

payoff statement for the credit. Any payments made to reduce the principal balance, as permitted herein, shall not result in a change or increase in the monthly payments due under this Agreement or the interest rate charged on the credit.

## 2.    COLLATERAL

**2.1    Personal Property.** The personal property listed below now owned or owned in the future by the parties listed below will secure Borrower's obligations to the Bank under this Agreement or, if the collateral is owned by a guarantor, will secure the guaranty, if so indicated in the security agreement. The collateral is further defined in security agreement(s) executed by the owners of the collateral.

(a)    Equipment and fixtures owned by the Borrower and Mihir Shah DDS Inc.

(b)    Inventory owned by the Borrower and Mihir Shah DDS Inc.

(c)    Receivables owned by the Borrower and Mihir Shah DDS Inc.

(d)    The life insurance policy on the life of Mihir Shah.

## 3.    LOAN ADMINISTRATION AND FEES

**3.1    Fees.**

(a)    The Borrower will pay to the Bank the fees set forth on Schedule A.

**3.2    Collection of Payments.**

(a)    Payments will be made by debit to a deposit account, if direct debit is provided for in this Agreement or is otherwise authorized by the Borrower. For payments not made by direct debit, payments will be made by mail to the address shown on the Borrower's statement, or by such other method as may be permitted by the Bank.

(b)    Each disbursement by the Bank and each payment by the Borrower will be evidenced by records kept by the Bank which will, absent manifest error, be conclusively presumed to be correct and accurate and constitute an account stated between the Borrower and the Bank.

**3.3    Borrower's Instructions.**

(a)    Subject to the terms, conditions and procedures stated elsewhere in this Agreement, the Bank may honor instructions for advances or repayments and any other instructions under this Agreement given by the Borrower (if an individual), or by any one of the individuals the Bank reasonably believes is authorized to sign loan agreements on behalf of the Borrower, or any other individual(s) designated by any one of such authorized signers (each an "Authorized Individual"). The Bank may honor any such instructions made by any one of the Authorized Individuals, whether such instructions are given in writing or by telephone, telefax or Internet and intranet websites designated by the Bank with respect to separate products or services offered by the Bank.

**3.4    Direct Debit.**

(a)    The Borrower agrees that on the due date of any amount due under this Agreement, the Bank will debit the amount due from deposit account number████████████ owned by M Shah Dental Inc., or such other of the Borrower's accounts with the Bank as designated in writing by the Borrower (the "Designated Account"). Should there be insufficient funds in the Designated Account to pay all such sums when due, the full amount of such deficiency shall be immediately due and payable by the Borrower.

(b)    The Borrower may terminate this direct debit arrangement at any time by sending written notice to the Bank. If the Borrower terminates this arrangement, then the principal amount outstanding under this Agreement will at the option of the Bank bear interest at a rate per annum which is one (1.0) percentage point higher than the rate of interest otherwise provided under this Agreement and the amount of each payment will be increased accordingly.

**3.5     Banking Days.** Unless otherwise provided in this Agreement, a banking day is a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the state where the Bank's lending office is located. All payments and disbursements which would be due or which are received on a day which is not a banking day will be due or applied, as applicable, to the credit on the next banking day.

**3.6     Interest Calculation.** Except as otherwise stated in this Agreement, all interest and fees, if any, will be computed on the basis of a 360-day year and a 30 day month. Installments of principal which are not paid when due under this Agreement shall continue to bear interest until paid.

**3.7     Default Rate.** Upon the occurrence of any default or after maturity or after judgment has been rendered on any obligation under this Agreement, all amounts outstanding under this Agreement, including any unpaid interest, fees, or costs, will at the option of the Bank bear interest at a rate which is 6.0 percentage point(s) higher than the rate of interest otherwise provided under this Agreement. This may result in compounding of interest. This will not constitute a waiver of any default.

## 4.     CONDITIONS

Before the Bank is required to extend any credit to the Borrower under this Agreement, it must receive any documents and other items it may reasonably require, in form and content acceptable to the Bank, including any items specifically listed below.

**4.1     Authorizations.** If the Borrower or any guarantor is anything other than a natural person, evidence that the execution, delivery and performance by the Borrower and/or such guarantor of this Agreement and any instrument or agreement required under this Agreement have been duly authorized.

**4.2     Governing Documents.** If required by the Bank, a copy of the Borrower's organizational documents.

**4.3     Guaranties.** Guaranties signed by Mihir Shah ("Mihir Shah") and Mihir Shah DDS Inc. ("Mihir Shah DDS Inc.").

**4.4     Security Agreements.** Signed original security agreements covering the personal property collateral which the Bank requires.

**4.5     Perfection and Evidence of Priority.** Evidence that the security interests and liens in favor of the Bank are valid, enforceable, properly perfected in a manner acceptable to the Bank and prior to all others' rights and interests, except those the Bank consents to in writing. All title documents for motor vehicles which are part of the collateral must show the Bank's interest.

**4.6     Payment of Fees.** Payment of all fees, expenses and other amounts due and owing to the Bank. If any fee is not paid in cash, the Bank may, in its discretion, treat the fee as a principal advance under this Agreement or deduct the fee from the loan proceeds.

**4.7     Escrow Agreement.** Escrow Agreement to be executed by Portfolio Escrow Inc.

## 5.     REPRESENTATIONS AND WARRANTIES

When the Borrower signs this Agreement, and until the Bank is repaid in full, the Borrower makes the following representations and warranties. Each request for an extension of credit constitutes a renewal of these representations and warranties as of the date of the request:

**5.1     Formation.** If the Borrower is anything other than a natural person, it is duly formed and existing under the laws of the state or other jurisdiction where organized.

**5.2     Authorization.** This Agreement, and any instrument or agreement required under this Agreement, are within the Borrower's powers, have been duly authorized, and do not conflict with any of its organizational papers.

**5.3     Good Standing.** In each state in which the Borrower does business, it is properly licensed, in good standing, and, where required, in compliance with fictitious name statutes.

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

**5.4     Financial Information.** All financial and other information that has been or will be supplied to the Bank is sufficiently complete to give the Bank accurate knowledge of the Borrower's (and any guarantor's) financial condition, including all material contingent liabilities. Since the date of the most recent financial statement provided to the Bank, there has been no material adverse change in the business condition (financial or otherwise), operations, properties or prospects of the Borrower (or any guarantor). If the Borrower is comprised of the trustees of a trust, the above representations shall also pertain to the trustor(s) of the trust.

**5.5     Lawsuits.** There is no lawsuit, tax claim or other dispute pending or threatened against the Borrower which, if lost, would impair the Borrower's financial condition or ability to repay the loan, except as have been disclosed in writing to the Bank.

**5.6     Other Obligations.** The Borrower is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation, except as have been disclosed in writing to the Bank.

**5.7     Tax Matters.** The Borrower has no knowledge of any pending assessments or adjustments of its income tax for any year and all taxes due have been paid, except as have been disclosed in writing to the Bank.

**5.8     No Event of Default.** There is no event which is, or with notice or lapse of time or both would be, a default under this Agreement.

**5.9     Collateral.** All collateral required in this Agreement is owned by the grantor of the security interest free of any title defects or any liens or interests of others, except those which have been approved by the Bank in writing.

**5.10    ERISA Plans.**

(a)     Each Plan (other than a multiemployer plan) is in compliance in all material respects with ERISA, the Code and other federal or state law, including all applicable minimum funding standards and there have been no prohibited transactions with respect to any Plan (other than a multiemployer plan), which has resulted or could reasonably be expected to result in a material adverse effect.

(b)     With respect to any Plan subject to Title IV of ERISA:

    (i)      No reportable event has occurred under Section 4043(c) of ERISA which requires notice.

    (ii)     No action by the Borrower or any ERISA Affiliate to terminate or withdraw from any Plan has been taken and no notice of intent to terminate a Plan has been filed under Section 4041 or 4042 of ERISA.

(c)     The following terms have the meanings indicated for purposes of this Agreement:

    (i)      "Code" means the Internal Revenue Code of 1986, as amended.

    (ii)     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

    (iii)    "ERISA Affiliate" means any trade or business (whether or not incorporated) under common control with the Borrower within the meaning of Section 414(b) or (c) of the Code.

    (iv)    "Plan" means a plan within the meaning of Section 3(2) of ERISA maintained or contributed to by the Borrower or any ERISA Affiliate, including any multiemployer plan within the meaning of Section 4001(a)(3) of ERISA.

---

| **6.** | **COVENANTS** |
|---|---|

The Borrower agrees, so long as credit is available under this Agreement and until the Bank is repaid in full:

**6.1     Use of Proceeds.** To use the proceeds of the credit only for business purposes.

**6.2     Financial Information.** To provide financial statements and other information in form and content acceptable to the Bank relating to the affairs of the Borrower and any guarantor as requested by the Bank from time to time.

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

**6.3    Other Debts.** Not to have outstanding or incur any direct or contingent liabilities or lease obligations (other than those to the Bank or to any affiliate of the Bank), or become liable for the liabilities of others, without the Bank's written consent. This does not prohibit:

(a)    Acquiring goods, supplies, or merchandise on normal trade credit.

(b)    Liabilities, lines of credit and leases in existence on the date of this Agreement disclosed in writing to the Bank.

(c)    If the Borrower is a natural person, additional debts of the Borrower as an individual for consumer purposes.

**6.4    Other Liens.** Not to create, assume, or allow any security interest or lien (including judicial liens) on property the Borrower now or later owns, except:

(a)    Liens and security interests in favor of the Bank or any affiliate of the Bank.

(b)    Liens outstanding on the date of this Agreement disclosed in writing to the Bank.

**6.5    Maintenance of Assets.**

(a)    Not to sell, assign, lease, transfer or otherwise dispose of any part of the Borrower's business or the Borrower's assets except inventory sold in the ordinary course of the Borrower's business.

(b)    Not to sell, assign, lease, transfer or otherwise dispose of any assets for less than fair market value, or enter into any agreement to do so.

(c)    Not to enter into any sale and leaseback agreement covering any of its fixed assets.

(d)    To maintain and preserve all rights, privileges, and franchises the Borrower now has.

(e)    To make any repairs, renewals, or replacements to keep the Borrower's properties in good working condition.

**6.6    Loans.** Not to make any loans, advances or other extensions of credit to any individual or entity except for extensions of credit in the nature of accounts receivable or notes receivable arising from the sale or lease of goods or services in the ordinary course of business to non-affiliated entities.

**6.7    Change of Management.** Not to make any substantial change in the present executive or management personnel of the Borrower.

**6.8    Change of Ownership.** If the Borrower is anything other than a natural person, not to cause, permit, or suffer any change in capital ownership such that there is a material change, as determined by the Bank in its sole discretion, in the direct or indirect capital ownership of the Borrower.

**6.9    Additional Negative Covenants.** Not to, without the Bank's written consent:

(a)    Enter into any consolidation, merger, or other combination, or become a partner in a partnership, a member of a joint venture, or a member of a limited liability company.

(b)    Acquire or purchase a business or its assets.

(c)    Engage in any business activities substantially different from the Borrower's present business.

(d)    Liquidate or dissolve the Borrower's business.

**6.10    Notices to Bank.** To promptly notify the Bank in writing of:

(a)    Any event of default under this Agreement, or any event which, with notice or lapse of time or both, would constitute an event of default.

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

5

(b)     Any change in the Borrower's name, legal structure, principal residence, or name on any driver's license or special identification card issued by any state (for an individual), state of registration (for a registered entity), place of business, or chief executive office if the Borrower has more than one place of business.

**6.11    Insurance**

(a)     <u>General Business Insurance.</u>  To maintain insurance as is usual for the business it is in.

(b)     <u>Insurance Covering Collateral.</u>  To maintain all risk property damage insurance policies (including without limitation windstorm coverage, and hurricane coverage as applicable) covering the tangible property comprising the collateral. Each insurance policy must be for the full replacement cost of the collateral and include a replacement cost endorsement.  The insurance must be issued by an insurance company acceptable to the Bank and must include a lender's loss payable endorsement in favor of the Bank in a form acceptable to the Bank.

(c)     <u>Evidence of Insurance.</u>  Upon the request of the Bank, to deliver to the Bank a copy of each insurance policy, or, if permitted by the Bank, a certificate of insurance listing all insurance in force.

**6.12    Compliance with Laws.**  To comply with the laws (including any fictitious or trade name statute), regulations, and orders of any government body with authority over the Borrower's business.  The Bank shall have no obligation to make any advance to the Borrower except in compliance with all applicable laws and regulations and the Borrower shall fully cooperate with the Bank in complying with all such applicable laws and regulations.

**6.13    Books and Records.**  To maintain adequate books and records.

**6.14    Audits.**  To allow the Bank and its agents to inspect the Borrower's properties and examine, audit, and make copies of books and records at any reasonable time.  If any of the Borrower's properties, books or records are in the possession of a third party, the Borrower authorizes that third party to permit the Bank or its agents to have access to perform inspections or audits and to respond to the Bank's requests for information concerning such properties, books and records.

**6.15    Perfection of Liens.**  To help the Bank perfect and protect its security interests and liens, and reimburse it for related costs it incurs to protect its security interests and liens.

**6.16    Cooperation.**  To take any action reasonably requested by the Bank to carry out the intent of this Agreement.

**6.17    Bank as Principal Depository.**  To maintain the Bank or one of its affiliates as its principal depository bank, including for the maintenance of business, cash management, operating and administrative deposit accounts.

| 7.    HAZARDOUS SUBSTANCES |
|---|

**7.1    Indemnity Regarding Hazardous Substances.**  The Borrower will indemnify and hold harmless the Bank from any loss or liability the Bank incurs in connection with or as a result of this Agreement, which directly or indirectly arises out of the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a hazardous substance.  This indemnity will apply whether the hazardous substance is on, under or about the Borrower's property or operations or property leased to the Borrower.  The indemnity includes but is not limited to attorneys' fees (including the reasonable estimate of the allocated cost of in-house counsel and staff).  The indemnity extends to the Bank, its parent, subsidiaries and all of their directors, officers, employees, agents, successors, attorneys and assigns.

**7.2    Compliance Regarding Hazardous Substances.**  The Borrower represents and warrants that the Borrower has complied with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances.

**7.3    Notices Regarding Hazardous Substances.**  Until full repayment of the loan, the Borrower will promptly notify the Bank in writing of any threatened or pending investigation of the Borrower or its operations by any governmental agency under any current or future law, regulation or ordinance pertaining to any hazardous substance.

**7.4    Site Visits, Observations and Testing.**  The Bank and its agents and representatives will have the right at any
Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

6

reasonable time, after giving reasonable notice to the Borrower, to enter and visit any locations where the collateral securing this Agreement (the "Collateral") is located for the purposes of observing the Collateral, taking and removing environmental samples, and conducting tests. The Borrower shall reimburse the Bank on demand for the costs of any such environmental investigation and testing. The Bank will make reasonable efforts during any site visit, observation or testing conducted pursuant to this paragraph to avoid interfering with the Borrower's use of the Collateral. The Bank is under no duty to observe the Collateral or to conduct tests, and any such acts by the Bank will be solely for the purposes of protecting the Bank's security and preserving the Bank's rights under this Agreement. No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of the Borrower; (ii) impose any liability on the Bank; or (iii) be a representation or warranty of any kind regarding the Collateral (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event the Bank has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to the Borrower or any other party, the Borrower authorizes the Bank to make such a disclosure. The Bank may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in the Bank's judgment. The Borrower further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to the Borrower by the Bank or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of the Borrower) by the Borrower without advice or assistance from the Bank.

**7.5    Definition of Hazardous Substances.** "Hazardous substances" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

**7.6    Continuing Obligation.** The Borrower's obligations to the Bank under this Article, except the obligation to give notices to the Bank, shall survive termination of this Agreement and repayment of the Borrower's obligations to the Bank under this Agreement.

| 8. | DEFAULT AND REMEDIES |
|---|---|

Without limiting any of the Bank's rights and remedies in this Agreement, if any of the following events of default occurs, the Bank may do one or more of the following without prior notice: declare the Borrower in default, stop making any additional credit available to the Borrower, and require the Borrower to repay its entire debt immediately. If an event which, with notice or the passage of time, will constitute an event of default has occurred and is continuing, the Bank has no obligation to make advances or extend additional credit under this Agreement. In addition, if any event of default occurs, the Bank shall have all rights, powers and remedies available under any instruments and agreements required by or executed in connection with this Agreement, as well as all rights and remedies available at law or in equity. If an event of default occurs under the paragraph entitled "Bankruptcy/Receivers," below, with respect to the Borrower, then the entire debt outstanding under this Agreement will automatically be due immediately.

**8.1    Failure to Pay.** The Borrower fails to make a payment under this Agreement when due.

**8.2    Covenants.** Any default in the performance of or compliance with any obligation, agreement or other provision contained in this Agreement (other than those specifically described as an event of default in this Article).

**8.3    Other Bank Agreements.** Any default occurs under any guaranty, subordination agreement, security agreement, deed of trust, mortgage, or other document required by or delivered in connection with this Agreement or any such document is no longer in effect, or any guarantor purports to revoke or disavow the guaranty; or any representation or warranty made by any guarantor is false when made or deemed to be made; or any default occurs under any other agreement the Borrower (or any Obligor) has with the Bank or any affiliate of the Bank. For purposes of this Agreement, "Obligor" shall mean any guarantor, any party pledging collateral to the Bank, or, if the Borrower is comprised of the trustees of a trust, any trustor.

**8.4    Cross-default.** Any default occurs under any agreement in connection with any credit the Borrower (or any Obligor) has obtained from anyone else or which the Borrower (or any Obligor) or any of the Borrower's related entities or affiliates has guaranteed.

**8.5    False Information.** The Borrower or any Obligor has given the Bank false or misleading information or representations.

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

7

**8.6    Bankruptcy/Receivers.** The Borrower, any Obligor, or any general partner of the Borrower or of any Obligor files a bankruptcy petition, a bankruptcy petition is filed against any of the foregoing parties and such petition is not dismissed within a period of forty-five (45) days after the filing, or the Borrower, any Obligor, or any general partner of the Borrower or of any Obligor makes a general assignment for the benefit of creditors; or a receiver or similar official is appointed for a substantial portion of Borrower's or any Obligor's business; or the business is terminated, or such Obligor is liquidated or dissolved.

**8.7    Revocation or Termination.** If the Borrower is comprised of the trustee(s) of a trust, the trust is revoked or otherwise terminated or all or a substantial part of the Borrower's assets are distributed or otherwise disposed of.

**8.8    Lien Priority.** The Bank fails to have an enforceable first lien (except for any prior liens to which the Bank has consented in writing) on or security interest in any property given as security for this Agreement (or any guaranty).

**8.9    Judgments.** Any judgments or arbitration awards are entered against the Borrower or any Obligor.

**8.10    Death.** If the Borrower or any Obligor is a natural person, the Borrower or such Obligor dies or becomes legally incompetent; if the Borrower or any Obligor is a trust, a trustor dies or becomes legally incompetent; if the Borrower or any Obligor is a partnership, any general partner dies or becomes legally incompetent.

**8.11    Material Adverse Change.** A material adverse change occurs, or is reasonably likely to occur, in the Borrower's (or any Obligor's) business condition (financial or otherwise), operations, or properties, or ability to repay the credit.

**8.12    Government Action.** Any government authority takes action that the Bank believes materially adversely affects the Borrower's or any Obligor's financial condition or ability to repay.

**8.13    ERISA Plans.** A reportable event occurs under Section 4043(c) of ERISA, or any Plan termination (or commencement of proceedings to terminate a Plan) or the full or partial withdrawal from a Plan under Section 4041 or 4042 of ERISA occurs; provided such event or events could reasonably be expected, in the judgment of the Bank, to have a material adverse effect.

**8.14    Insurance.** The Borrower, or any of its owners, partners, members, shareholders or revenue generating employees (each, a "Professional") ceases to have malpractice insurance or other insurance as required by this Agreement.

**8.15    Medicare Certification.** The Borrower (or any of its Professionals) has its Medicare Certification terminated, suspended or revoked, whether temporarily or permanently; or any hearings or proceedings are commenced which could lead to such a termination, suspension or revocation; or there is any material controversy with Medicare or Medicaid or with any other third-party payor which calls into question the eligibility of the Borrower (or any of its Professionals) for participation in the relevant program or which involves any material amount of accounts receivable of any of the foregoing.

**8.16    Licensing.** With respect to the Borrower, one or more of the Professionals have their licenses to practice temporarily or permanently suspended or revoked for any reason in any jurisdiction, or are subject to any sanction or penalty from any licensing board, agency or court, where such Professionals, in the aggregate, have contributed more than 10% of net revenue of the Borrower.

**8.17    Departures.** One or more of its Professionals leave the practice of the Borrower (whether by resignation, death, retirement or otherwise) such that either of the following apply: (a) the net impact of the departures results in a decline of 10% or more over a 12 month period in net revenue of the Borrower; or (b) the net impact of the departures results in a decline of 15% or more over a 24 month period in net revenue of the Borrower.

| 9. | ENFORCING THIS AGREEMENT; MISCELLANEOUS |
|---|---|

**9.1    GAAP.** Except as otherwise stated in this Agreement, all financial information provided to the Bank and all financial covenants will be made under generally accepted accounting principles, consistently applied or another basis acceptable to the Bank.

**9.2    Governing Law.** Except to the extent that any law of the United States may apply, this Agreement shall be governed and interpreted according to the laws of California (the "Governing Law State"), without regard to any choice of

law, rules or principles to the contrary. Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of the Bank under federal law.

**9.3    Venue and Jurisdiction.** The Borrower agrees that any action or suit against the Bank arising out of or relating to this Agreement shall be filed in federal court or state court located in the Governing Law State. The Borrower agrees that the Bank shall not be deemed to have waived its rights to enforce this section by filing an action or suit against the Borrower in a venue outside of the Governing Law State. If the Bank does commence an action or suit arising out of or relating to this Agreement, the Borrower agrees that the case may be filed in federal court or state court in the Governing Law State. The Bank reserves the right to commence an action or suit in any other jurisdiction where the Borrower, any Guarantor, or any collateral has any presence or is located. The Borrower consents to personal jurisdiction and venue in such forum selected by the Bank and waives any right to contest jurisdiction and venue and the convenience of any such forum. The provisions of this section are material inducements to the Bank's acceptance of this Agreement.

**9.4    Successors and Assigns.** This Agreement is binding on the Borrower's and the Bank's successors and assignees. The Borrower agrees that it may not assign this Agreement without the Bank's prior consent.

**9.5    Dispute Resolution Provision.** This paragraph, including the subparagraphs below, is referred to as the "Dispute Resolution Provision." The Bank and the Borrower (and any other party to this Agreement) agree that this Dispute Resolution Provision is a material inducement for their entering into this Agreement.

(a)    Scope. This Dispute Resolution Provision concerns the resolution of any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses (collectively, a "Claim" or "Claims") between the Bank, on the one hand, and the Borrower and/or any Obligor, on the other hand (each side being, for the purposes of this Dispute Resolution Provision, a "Party" and the two sides together being the "Parties"), regardless of whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Agreement, including but not limited to Claims that arise out of or relate to: (i) this Agreement (including any renewals, extensions or modifications); or (ii) any document related to this Agreement. For the purposes of this Dispute Resolution Provision only, the terms "Bank" or Party or Parties (to the extent referring to or including the Bank) shall include any parent corporation, subsidiary or affiliate of the Bank.

(b)    Judicial Reference. Any Claim brought by any Party in a California state court shall be resolved by a general reference to a referee (or a panel of referees) as provided in California Code of Civil Procedure Section 638. The referee (or presiding referee of the panel) shall be a retired Judge or Justice of the California state court system. The referee(s) shall be selected by mutual written agreement of the parties. If the parties do not agree, the referee(s) shall be selected by the Presiding Judge of the Court (or his or her representative) as provided in California Code of Civil Procedure Section 640. The referee(s) shall hear and determine all issues relating to the Claim, whether of fact or of law, and shall do so in accordance with the laws of the Governing Law State and the California rules of evidence and civil procedure, and shall report a statement of decision. The referee(s) shall be empowered to enter equitable as well as legal relief, provide all temporary or provisional remedies, enter equitable and legal orders that will be binding on the parties, and rule on any motion which would be authorized in court litigation, including without limitation motions to dismiss, for summary judgment, or for summary adjudication. The referee(s) shall award legal fees and costs (including the fees of the referee(s)) relating to the judicial reference proceeding, and to any related litigation or arbitration, in accordance with the terms of this Agreement. The award that results from the decision of the referee(s) shall be entered as a judgment in the court that appointed the referee(s), in accordance with the provisions of California Code of Civil Procedure Sections 644(a). Pursuant to California Code of Civil Procedure Sections 645, the parties reserve the right to seek appellate review of any judgment or order, including but not limited to, orders pertaining to class certification, to the same extent permitted in a court of law.

(c)    Arbitration Provisions. The Parties agree that judicial reference pursuant to Subsection (b) above is the preferred method of dispute resolution of all Claims, when available. The Parties therefore agree that injunctive relief, including a temporary restraining order, without the posting of any bond or security, shall be appropriate to enjoin the prosecution of any arbitration proceeding where the Claims at issue become subject to (and as long as they remain subject to) judicial reference pursuant to Subsection (b) above, provided that a Party moves for such relief within thirty (30) days of its receipt of a demand for arbitration of a Claim. However, with respect to any Claim brought in a forum other than a California state court, or brought in a California state court but judicial reference pursuant to Subsection (b) above is not available or enforced by the court, the arbitration provisions in this Subsection (c) (collectively, the "Arbitration Provisions") shall apply to the Claim. In addition, if either of the

Parties serves demand for arbitration of a Claim in accordance with these Arbitration Provisions, and the other Party does not move to enjoin the arbitration proceeding within thirty (30) days of receipt of the demand, the right to judicial reference shall be waived and the Claim shall remain subject to these Arbitration Provisions thereafter. The inclusion of these Arbitration Provisions in this Agreement shall not otherwise be deemed as any limitation or waiver of the judicial reference provisions. The Arbitration Provisions are as follows:

(i)     For any Claim for which these Arbitration Provisions apply (as defined in the immediately preceding paragraph), the Parties agree that at the request of any Party to this Agreement, such Claim shall be resolved by binding arbitration. The Claims shall be governed by the laws of the Governing Law State without regard to its conflicts of law principles. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "Act"), shall apply to the construction, interpretation, and enforcement of these Arbitration Provisions, as well as to the confirmation of or appeal from any arbitration award.

(ii)    Arbitration proceedings will be determined in accordance with the Act, the then-current Commercial Finance rules and procedures of the American Arbitration Association or any successor thereof ("AAA") (or any successor rules for arbitration of financial services disputes), and the terms of these Arbitration Provisions. In the event of any inconsistency, the terms of these Arbitration Provisions shall control. The arbitration shall be administered by the Parties and not the AAA and shall be conducted, unless otherwise required by law, at a location selected solely by the Bank in any U.S. state where real or tangible personal property collateral for this credit is located or where the Borrower has a place of business. If there is no such state, the Bank shall select a location in the Governing Law State.

(iii)   If aggregate Claims are One Million Dollars ($1,000,000) or less:

        (A)     All issues shall be heard and determined by one neutral arbitrator. The arbitrator shall have experience with commercial financial services disputes and, if possible, prior judicial experience, and shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by the Bank. If the AAA "Arbitrator Select: List and Appointment" process is unavailable, the Bank shall initiate any successor process offered by the AAA or a similar process offered by any other nationally recognized alternative dispute resolution organization.

        (B)     Unless the arbitrator has a dispositive motion under advisement or unforeseeable and unavoidable conflicts arise (as determined by the arbitrator), all arbitration hearings shall commence within ninety (90) days of the appointment of the arbitrator, and under any circumstances the award of the arbitrator shall be issued within one hundred twenty (120) days of the appointment of the arbitrator.

        (C)     A Party shall be entitled to take no more than two (2) fact depositions, one or both of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

        (D)     There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed twenty (20) in number, including subparts. The requests shall be served within forty-five (45) days of the appointment of the arbitrator and shall be responded to within twenty-one (21) days of service.

(iv)    If aggregate Claims exceed One Million Dollars ($1,000,000):

        (A)     The issues shall be heard and determined by one neutral arbitrator selected as above unless either Party requests that all issues be heard and determined by three (3) neutral arbitrators. In that event, each Party shall select an arbitrator with experience with commercial financial services disputes, and the two arbitrators shall select a third arbitrator, who shall have prior judicial experience. If the arbitrators cannot agree, the third arbitrator shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by the Bank.

        (B)     Unless the arbitrator(s) have a dispositive motion under advisement or other good cause is shown (as determined by the arbitrator(s)), all arbitration hearings shall commence within one hundred twenty (120) days of the appointment of the arbitrator(s), and under any circumstances the award of the arbitrator(s) shall be issued within one hundred eighty (180) days of the

appointment of the arbitrator(s).

(C)    A Party shall be entitled to take no more than five (5) fact depositions, one or more of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

(D)    There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed thirty (30) in number, including subparts. The requests shall be served within forty-five (45) days of the appointment of the arbitrator(s) and shall be responded to within twenty-one (21) days of service.

(v)    Where a Party intends to rely upon the testimony of an expert on an issue for which the Party bears the burden of proof, the expert(s) must be disclosed within thirty (30) days following the appointment of the arbitrator(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B). The arbitrator(s) shall exclude any expert not disclosed strictly in accordance herewith. The other Party shall have the right within thirty (30) days thereafter to take the deposition of the expert(s) (upon payment of the expert's reasonable fees for the in-deposition time), and to identify rebuttal expert(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B).

(vi)    The arbitrator(s) shall consider and rule on motions by the Parties to dismiss for failure to state a claim; to compel; and for summary judgment, in a manner substantively consistent with the corresponding Federal Rules of Civil Procedure. The arbitrator(s) shall enforce the "Apex" doctrine with regard to requested depositions of high-ranking executives of both Parties. The arbitrator(s) shall exclude any Claim not asserted within thirty (30) days following the demand for arbitration. This shall not prevent a Party from revising the calculation of damages on any existing theory. All discovery shall close at least one (1) week before any scheduled hearing date, and all hearing exhibits shall have been exchanged by the same deadline or they shall not be given weight by the arbitrator(s).

(vii)    The arbitrator(s) will give effect to applicable statutes of limitation in determining any Claim and shall dismiss the Claim if it is barred by the statutes of limitation. For purposes of the application of any statutes of limitation, the service of a written demand for arbitration or counterclaim pursuant to the Notices provision of this Agreement is the equivalent of the filing of a lawsuit. At the request of any Party made at any time, including at confirmation of an award, the resolution of a statutes of limitation defense to any Claim shall be decided de novo by a court of competent jurisdiction rather than by the arbitrator(s). Otherwise, any dispute concerning these Arbitration Provisions or whether a Claim is arbitrable shall be determined by the arbitrator(s), except as otherwise set forth in this Dispute Resolution Provision.

(viii)    The arbitrator(s) shall have the power to award legal fees and costs relating to the arbitration proceeding and any related litigation or arbitration, pursuant to the terms of this Agreement. The arbitrator(s) shall provide a written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and have judgment entered and enforced.

(ix)    The filing of a court action is not intended to constitute a waiver of the right of any Party, including the suing Party, thereafter to require submittal of the Claims to arbitration, unless the Party fails to make such demand for arbitration within ninety (90) days following the filing of the court action.

(x)    The arbitration proceedings shall be private. All documents, transcripts, and filings received by any Party shall not be disclosed by the recipient to any third parties other than attorneys, accountants, auditors, and financial advisors acting in the course of their representation, or as otherwise ordered by a court of competent jurisdiction. Any award also shall be kept confidential, although this specific requirement shall be void once the award must be submitted to a court for enforcement. The Parties agree that injunctive relief, including a temporary restraining order, from a trial court is the appropriate relief for breach of this paragraph, and they waive any security or the posting of a bond as a requirement for obtaining such relief.

(d)    Self-Help. This Dispute Resolution Provision does not limit the right of any Party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

11

additional or supplementary remedies.

(e)     Class Action Waiver.  Any arbitration or court trial (whether before a judge or jury or pursuant to judicial reference) of any Claim will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver").  **THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.** Regardless of anything else in this Dispute Resolution Provision, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator.  The Parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the Parties and is nonseverable from the agreement to arbitrate Claims.  If the Class Action Waiver is limited, voided or found unenforceable, then the Parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver.  **THE PARTIES ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED.**

(f)     Jury Waiver.  By agreeing to judicial reference or binding arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury as permitted by law in respect of any Claim.  Furthermore, without intending in any way to limit the provisions hereof, to the extent any Claim is not submitted to judicial reference or arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury to the extent permitted by law in respect of such Claim.  This waiver of jury trial shall remain in effect even if the Class Action Waiver is limited, voided or found unenforceable.  **WHETHER THE CLAIM IS DECIDED BY JUDICIAL REFERENCE, BY ARBITRATION, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS DISPUTE RESOLUTION PROVISION IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.  EACH PARTY HERETO (i) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (iii) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

**9.6     Severability; Waivers.**  If any part of this Agreement is not enforceable, the rest of the Agreement may be enforced.  The Bank retains all rights, even if it makes a loan after default.  If the Bank waives a default, it may enforce a later default.  Any consent or waiver under this Agreement must be in writing.

**9.7     Expenses.**

(a)     The Borrower shall pay to the Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, expended or incurred by the Bank in connection with (i) the negotiation and preparation of this Agreement and any related agreements, the Bank's continued administration of this Agreement and such related agreements, and the preparation of any amendments and waivers related to this Agreement or such related agreements, (ii) filing, recording and search fees, appraisal fees, field examination fees, title report fees, and documentation fees with respect to any collateral and books and records of the Borrower or any Obligor, (iii) the Bank's costs or losses arising from any changes in law which are allocated to this Agreement or any credit outstanding under this Agreement, and (iv) costs or expenses required to be paid by the Borrower or any Obligor that are paid, incurred or advanced by the Bank.

(b)     The Borrower will indemnify and hold the Bank harmless from any loss, liability, damages, judgments, and costs of any kind relating to or arising directly or indirectly out of (i) this Agreement or any document required hereunder, (ii) any credit extended or committed by the Bank to the Borrower hereunder, and (iii) any litigation or proceeding related to or arising out of this Agreement, any such document, or any such credit, including, without limitation, any act resulting from the Bank complying with instructions the Bank reasonably believes are made by any Authorized Individual.  This paragraph will survive this Agreement's termination, and will benefit the Bank and its officers, employees, and agents.

(c)     The Borrower shall reimburse the Bank for any reasonable costs and attorneys' fees incurred by the Bank in connection with (i) the enforcement or preservation of the Bank's rights and remedies and/or the collection of any obligations of the Borrower which become due to the Bank and in connection with any "workout" or restructuring,

and (ii) the prosecution or defense of any action in any way related to this Agreement, the credit provided hereunder or any related agreements, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by the Bank or any other person) relating to the Borrower or any other person or entity.

**9.8    Individual Liability.**  If the Borrower is a natural person, the Bank may proceed against the Borrower's business and non-business property in enforcing this and other agreements relating to this loan.  If the Borrower is a partnership, the Bank may proceed against the business and non-business property of each general partner of the Borrower in enforcing this and other agreements relating to this loan.

**9.9    Joint and Several Liability.**  If two or more Borrowers sign this Agreement, each Borrower agrees that it is jointly and severally liable to the Bank for the payment of all obligations arising under this Agreement, and that such liability is independent of the obligations of the other Borrowers.

**9.10    Set-Off.**  Upon and after the occurrence of an event of default under this Agreement, (a) the Borrower hereby authorizes the Bank, at any time and from time to time, without notice, which is hereby expressly waived by the Borrower, and whether or not the Bank shall have declared any credit subject hereto to be due and payable in accordance with the terms hereof, to set off against, and to appropriate and apply to the payment of, the Borrower's Obligations (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any and all amounts owing by the Bank to the Borrower (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced), and (b) pending any such action, to the extent necessary, to hold such amounts as collateral to secure such Obligations and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposits so held as the Bank, in its sole discretion, may elect.  The Borrower hereby grants to the Bank a security interest in all deposits and accounts maintained with the Bank to secure the payment of all Obligations of the Borrower to the Bank under this Agreement and all agreements, instruments and documents related to this Agreement. "Obligations" means all obligations, now or hereafter existing, of the Borrower to the Bank under this Agreement and under any other agreement or instrument executed in connection with this Agreement.

**9.11    One Agreement.**  This Agreement and any related security or other agreements required by this Agreement constitute the entire agreement between the Borrower and the Bank with respect to each credit subject hereto and supersede all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof.

In the event of any conflict between this Agreement and any other agreements required by this Agreement, this Agreement will prevail.

**9.12    Notices.**  Unless otherwise provided in this Agreement or in another agreement between the Bank and the Borrower, all notices required under this Agreement shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier to the addresses on the signature page of this Agreement, or to such other addresses as the Bank and the Borrower may specify from time to time in writing.  Notices and other communications shall be effective (i) if mailed, upon the earlier of receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, or (ii) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered.

**9.13    Headings.**  Article and paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement.

**9.14    Counterparts.**  This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original, and all of which when taken together shall constitute one and the same Agreement.  Delivery of an executed counterpart of this Agreement (or of any agreement or document required by this Agreement and any amendment to this Agreement) by telecopy or other electronic imaging means shall be as effective as delivery of a manually executed counterpart of this Agreement; provided, however, that the telecopy or other electronic image shall be promptly followed by an original if required by the Bank.

**9.15    Borrower Information; Reporting to Credit Bureaus.**  The Borrower authorizes the Bank at any time to verify or check any information given by the Borrower to the Bank, check the Borrower's credit references, verify employment, and obtain credit reports.  The Borrower agrees that the Bank shall have the right at all times to disclose and report to credit

Ref #: 1002469898 : - M Shah Dental Inc.
AFS Loan Agreement

13

reporting agencies and credit rating agencies such information pertaining to the Borrower and/or all guarantors as is consistent with the Bank's policies and practices from time to time in effect.

**9.16    Amendments.** This Agreement may be amended or modified only in writing signed by each party hereto.

This Agreement is executed as of the date stated at the top of the first page.

Bank:

**Bank of America, N.A.**

By: _____
    Authorized Signer, Officer
        **Gwendolyn Trowers, Officer**

Borrower:

**M Shah Dental Inc.**

By: _____
    Mihir Shah, President

Address where notices to M Shah Dental Inc. are to be sent:

8401 Van Nuys Boulevard
Suite 26 A
Panorama City, CA 91402-3586

Address where notices to the Bank are to be sent:

Doc Retention Center
NC1-001-05-13
One Independence Center
101 North Tryon St
Charlotte, NC 28255-0001

*Federal law requires Bank of America, N.A. (the "Bank") to provide the following notice. The notice is not part of the foregoing agreement or instrument and may not be altered. Please read the notice carefully.*

**(1)    USA PATRIOT ACT NOTICE**

Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. The Bank will ask for the Borrower's legal name, address, tax ID number or social security number and other identifying information. The Bank may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of the Borrower, guarantors or other related persons.

## SCHEDULE A

### FEES

(a)  <u>Loan Fee</u>.  The Borrower agrees to pay a loan fee in the amount of Three Hundred and 00/100 Dollars ($300.00). This fee is due on the date of this Agreement.

(b)  <u>Waiver Fee</u>.  If the Bank, at its discretion, agrees to waive or amend any terms of this Agreement, the Borrower will, at the Bank's option, pay the Bank a fee for each waiver or amendment in an amount advised by the Bank at the time the Borrower requests the waiver or amendment.  Nothing in this paragraph shall imply that the Bank is obligated to agree to any waiver or amendment requested by the Borrower.  The Bank may impose additional requirements as a condition to any waiver or amendment.

(c)  <u>Late Fee</u>.  To the extent permitted by law, the Borrower agrees to pay a late fee in an amount not to exceed four percent (4%) of any payment that is more than fifteen (15) days late.  The imposition and payment of a late fee shall not constitute a waiver of the Bank's rights with respect to the default.

# Exhibit 2

**Bank of America** 

BORROWER:
M Shah Dental Inc.

GUARANTOR:
Mihir Shah
Mihir Shah DDS Inc.

## CONTINUING AND UNCONDITIONAL GUARANTY

1. <u>The Guaranty</u>. For valuable consideration, the undersigned, (whether one or more than one "Guarantor") hereby unconditionally guarantees and promises to pay promptly to Bank of America, N.A., its subsidiaries and affiliates (collectively, "Bank"), or order, in lawful money of the United States, any and all Indebtedness of M Shah Dental Inc. ("Borrower") to Bank when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter.  The liability of Guarantor under this Guaranty is not limited as to the principal amount of the Indebtedness guaranteed and includes, without limitation, liability for all interest, fees, indemnities, and other costs and expenses relating to or arising out of the Indebtedness and for all swap, derivative, foreign exchange or hedge or other similar transaction or arrangement ("Swap Obligations") now or hereafter owing from Borrower to Bank. No Guarantor will be deemed to be a guarantor of any Swap Obligation to the extent that such Guarantor is not an Eligible Contract Participant at the time such guaranty becomes effective with respect to such Swap Obligations as set forth in the Commodities Exchange Act (7 U.S.C., Sec. 1, et. seq.). The liability of Guarantor is continuing and relates to any Indebtedness, including that arising under successive transactions which shall either continue the Indebtedness or from time to time renew it after it has been satisfied. This Guaranty is cumulative and does not supersede any other outstanding guaranties, and the liability of Guarantor under this Guaranty is exclusive of Guarantor's liability under any other guaranties signed by Guarantor. If multiple individuals or entities sign this Guaranty, their obligations under this Guaranty shall be joint and several. "Indebtedness" shall mean and includes any and all advances, debts, obligations and liabilities of Borrower, or any of them, previously, now or later made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, including Swap Obligations and obligations under any deposit, treasury management or other similar transaction or arrangement, and whether any of the Borrowers may be liable individually or jointly with others, or whether recovery upon such Indebtedness may be or later becomes unenforceable.

2. <u>Obligations Independent</u>.  The obligations under this Guaranty are independent of the obligations of Borrower or any other guarantor, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

3. <u>Rights of Bank</u>.  Guarantor authorizes Bank, without notice or demand and without affecting its liability hereunder, from time to time to:

(a)  renew, compromise, extend, accelerate, or otherwise change the time for payment, or otherwise change the terms, of the Indebtedness or any part thereof, including increase or decrease of the rate of interest, or otherwise change the terms of any Bank Agreements;

(b)  receive and hold security for the payment of this Guaranty or any Indebtedness and exchange, enforce, waive, release, fail to perfect, sell, or otherwise dispose of any such security;

Ref #: 1002469890 : - M Shah Dental Inc.
Continuing and Unconditional Guaranty

(c) apply such security and direct the order or manner of sale thereof as Bank in its discretion may determine;

(d) release or substitute any Guarantor or any one or more of any endorsers or other guarantors of any of the Indebtedness; and

(e) permit the Indebtedness to exceed Guarantor's liability under this Guaranty, and Guarantor agrees that any amounts received by Bank from any source other than Guarantor shall be deemed to be applied first to any portion of the Indebtedness not guaranteed by Guarantor.

4. Guaranty to be Absolute. Guarantor agrees that until the Indebtedness has been paid in full in immediately available funds and any commitments of Bank or facilities provided by Bank with respect to the Indebtedness have been terminated, Guarantor shall not be released by or because of the taking, or failure to take, any action that might in any manner vary, discharge or otherwise reduce, limit, or modify Guarantor's obligations under this Guaranty. Guarantor waives and surrenders any defense to any liability under this Guaranty based upon any such action, including but not limited to any action of Bank described in the immediately preceding paragraph of this Guaranty. It is the express intent of Guarantor that Guarantor's obligations under this Guaranty are and shall be absolute and unconditional. This is a guaranty of payment and not merely a guaranty of collection. If this Guaranty is revoked, returned, or canceled, and subsequently any payment or transfer of any interest in property by Borrower to Bank is rescinded or must be returned by Bank to Borrower, this Guaranty shall be reinstated with respect to any such payment or transfer, regardless of any such prior revocation, return, or cancellation; and any guaranty of any indemnities, shall survive any termination of this Guaranty. In the event of the death of a Guarantor, the liability of the estate of the deceased Guarantor shall continue in full force and effect as to (i) the Indebtedness existing at the date of death, and any renewals or extensions, and (ii) loans or advances made to or for the account of Borrower after the date of the death of the deceased Guarantor pursuant to a commitment made by Bank to Borrower prior to the date of such death. As to all surviving Guarantors, this Guaranty shall continue in full force and effect after the death of a Guarantor, not only as to the Indebtedness existing at that time, but also as to the Indebtedness later incurred by Borrower to Bank. In the event that acceleration of the time for payment of any of the Indebtedness is stayed upon the insolvency, bankruptcy, or reorganization of Borrower or otherwise, all such Indebtedness guaranteed by Guarantor shall nonetheless be payable by Guarantor immediately if requested by Bank.

5. Guarantor's Waivers of Certain Rights and Certain Defenses. Guarantor waives:

(a) any right to require Bank to:

(i) proceed against Borrower or any other person;

(ii) marshal assets or proceed against or exhaust any security held from any of the Borrowers or any other person;

(iii) give notice of the terms, time and place of any public or private sale or other disposition of personal property security held from Borrower or any other person;

(iv) take any other action or pursue any other remedy in Bank's power; or

(v) make any presentment or demand for performance, or give any notice of nonperformance, acceleration, protest, notice of protest or notice of dishonor hereunder or in connection with any obligations or evidences of indebtedness held by Bank as security for or which constitute in whole or in part the Indebtedness guaranteed hereunder, or in connection with the creation of new or additional Indebtedness, or give any notice of acceptance of this Guaranty, or notices of any fact that might increase Guarantor's risk.

(b) any defense to its obligations under this Guaranty based upon or arising by reason

of:

        (i)  any disability or other defense of Borrower or any other person;

        (ii)  the cessation or limitation from any cause whatsoever, other than payment in full, of the Indebtedness of Borrower or any other person;

        (iii)  any lack of authority of any officer, director, partner, agent or any other person acting or purporting to act on behalf Borrower which is a corporation, partnership or other type of entity, or any defect in the formation of Borrower;

        (iv)  the application by Borrower of the proceeds of any Indebtedness for purposes other than the purposes represented by Borrower to, or intended or understood by, Bank or Guarantor;

        (v)  any act or omission by Bank which directly or indirectly results in or aids the discharge of Borrower or any portion of the Indebtedness by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of Bank against Borrower;

        (vi)  any impairment of the value of any interest in any security for the Indebtedness, including without limitation, the failure to obtain or maintain perfection or recordation of any interest in any such security, the release of any such security without substitution, and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any such security;

        (vii)  any modification of the Indebtedness, in any form whatsoever, including any modification made after revocation hereof to any Indebtedness incurred prior to such revocation, and including without limitation the renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Indebtedness, including increase or decrease of the rate of interest;

        (viii)  any requirement that Bank give any notice of acceptance of this Guaranty;

        (ix)  any defense based on any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower;

        (x)  the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty; or

        (xi)  any election of remedies by Bank, even though that election of remedies, such as a non-judicial foreclosure with respect to any security for any portion of the Indebtedness, destroys Guarantor's rights of subrogation or Guarantor's rights to proceed against Borrower for reimbursement.

        (c)  until the Indebtedness has been paid in full and any commitments of Bank or facilities provided by Bank with respect to the Indebtedness have been terminated, even though the Indebtedness may be in excess of Guarantor's liability hereunder, to the extent permitted by applicable law, any right of subrogation, reimbursement, indemnification, and contribution (contractual, statutory, or otherwise).

No provision or waiver in this Guaranty shall be construed as limiting the generality of any other waiver contained in this Guaranty.

        6.  <u>General Partner Liability and Waivers of Other Rights and Defenses.</u>

        (a)  If Borrower is a partnership and Guarantor is a general partner of that partnership,

then Guarantor shall not be liable under this Guaranty for any portion of the Indebtedness that is secured by real property; provided, however, that Guarantor shall remain liable under partnership law for all the Indebtedness.

(b)  Guarantor waives any rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(c)  Guarantor waives all rights and defenses that Guarantor may have because any of the Indebtedness is secured by real property.  This means, among other things:

(i)  Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii)  if Bank forecloses on any real property collateral pledged by Borrower:  (1) the amount of the Indebtedness may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (2) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower; and

(iii)  if Bank consents to a sale of the real property for less than the remaining amount of the Indebtedness due at the time of sale, the amount of Guarantor's obligation for Indebtedness guarantied hereunder shall be reduced only by the amount of sales proceeds applied against the Indebtedness, even if such consent destroyed rights Guarantor may have to collect from Borrower, and notwithstanding Section 580e of the California Code of Civil Procedure or any other statute.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because any of the Indebtedness is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, 580e or 726 of the California Code of Civil Procedure.

(d)  Guarantor waives any right or defense it may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure.

7.  Lien and Setoff.  Guarantor grants to Bank a continuing lien, security interest, and right of setoff as security for all of Guarantor's liabilities and obligations to Bank, whether now existing or later arising, upon and against all the deposits, credits, collateral and property of Guarantor (other than clients' trust and other fiduciary accounts or escrows) now or hereafter in the possession, custody, or control of Bank or any entity under the control of Bank of America Corporation and its successors and assigns or in transit to any of them.  At any time, without further demand or notice (any such notice being expressly waived by Guarantor), Bank may set off the same or any part thereof and apply the same to any liability or obligation of Guarantor even though unmatured and regardless of the adequacy of any other collateral securing this Guaranty.  **TO THE EXTENT PERMITTED BY LAW, ANY AND ALL RIGHTS TO REQUIRE BANK TO EXERCISE ITS REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LIABILITIES PRIOR TO EXERCISING ITS RIGHT OF SET OFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF GUARANTOR, ARE VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVED.**

8.  Subordination.  Any obligations of Borrower to Guarantor, now or hereafter existing, including but not limited to any obligations to Guarantor as subrogee of Bank or resulting from Guarantor's performance under this Guaranty, are hereby subordinated to the Indebtedness.  Guarantor agrees that, if Bank so requests, Guarantor shall not demand, take, or receive from Borrower, by setoff or in any other manner, payment of any other obligations of Borrower to Guarantor until the Indebtedness has been paid in full and any commitments of Bank or facilities provided by Bank with respect to the Indebtedness have been terminated.  If any payments are received by Guarantor in violation of such waiver or agreement, such payments shall be received by Guarantor as

trustee for Bank and shall be paid over to Bank on account of the Indebtedness, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Any security interest, lien, or other encumbrance that Guarantor may now or hereafter have on any property of Borrower is hereby subordinated to any security interest, lien, or other encumbrance that Bank may have on any such property.

9. Revocation of Guaranty.

(a) This Guaranty may be revoked at any time by Guarantor in respect to future transactions. Such revocation shall be effective upon actual receipt by Bank, at the address shown below or at such other address as may have been provided to Guarantor by Bank, of written notice of revocation. Revocation shall not affect any of Guarantor's obligations or Bank's rights with respect to transactions committed or entered into prior to Bank's receipt of such notice, nor shall it affect Guarantor's obligations with respect to any indemnities, executed prior to Bank's receipt of such notice.

(b) Guarantor acknowledges and agrees that this Guaranty may be revoked only in accordance with the foregoing provisions of this paragraph and shall not be revoked simply as a result of any change in name, location, ownership or composition or structure of Borrower, or the dissolution of Borrower.

10. Extent of Guaranty. If Guarantor is a subsidiary or affiliate of Borrower, in addition to the limitations on Guarantor's liability set forth above in Paragraph 1, Guarantor's liability hereunder shall not exceed at any one time the largest amount during the period commencing with Guarantor's execution of this Guaranty and thereafter that would not render Guarantor's obligations hereunder subject to avoidance under Section 548 of the Bankruptcy Code (Title 11, United States Code) or any comparable provisions of any applicable state law.

11. Taxes.

(a) Guarantor represents and warrants that it is organized and resident in the United States of America. All payments by Guarantor hereunder shall be paid in full, without setoff or counterclaim or any deduction or withholding whatsoever, including, without limitation, for any and all present and future taxes. If Guarantor must make a payment under this Guaranty, Guarantor represents and warrants that it will make the payment from one of its U.S. resident offices to Bank so that no withholding tax is imposed on the payment. Notwithstanding the foregoing, if Guarantor makes a payment under this Guaranty to which withholding tax applies or if any taxes (other than taxes on net income (i) imposed by the country or any subdivision of the country in which Bank's principal office or actual lending office is located and (ii) measured by the United States taxable income Bank would have received if all payments under or in respect of this Guaranty were exempt from taxes levied by Guarantor's country) are at any time imposed on any payments under or in respect of this Guaranty including, but not limited to, payments made pursuant to this paragraph, Guarantor shall pay all such taxes to the relevant authority in accordance with applicable law such that Bank receives the sum it would have received had no such deduction or withholding been made (or, if Guarantor cannot legally comply with the foregoing, Guarantor shall pay to Bank such additional amounts as will result in Bank receiving the sum it would have received had no such deduction or withholding been made). Further, Guarantor shall also pay to Bank, on demand, all additional amounts that Bank specifies as necessary to preserve the after-tax yield Bank would have received if such taxes had not been imposed.

(b) Guarantor shall promptly provide Bank with an original receipt or certified copy issued by the relevant authority evidencing the payment of any such amount required to be deducted or withheld.

12. Information Relating to Borrower. Guarantor acknowledges and agrees that it has made such independent examination, review, and investigation of the Bank Agreements as Guarantor deems necessary and appropriate, and shall have sole responsibility to obtain from Borrower any information required by Guarantor about any modifications to the Bank Agreements. Guarantor further acknowledges that Bank has no duty, and Guarantor is not relying on Bank, at any time to disclose to Guarantor any information relating to the business operations or financial condition of Borrower. "Bank Agreements" shall mean all agreements, documents, and

instruments evidencing any of the Indebtedness, including but not limited to all loan agreements between Borrower and Bank and promissory notes from Borrower in favor of Bank, and all deeds of trust, mortgages, security agreements, and other agreements, documents, and instruments executed by Borrower in connection with the Indebtedness, all as now in effect and as hereafter amended, restated, renewed, or superseded.

13. <u>Borrower's Authorization</u>. Where Borrower is a corporation, partnership, or limited liability company, it is not necessary for Bank to inquire into the powers of Borrower or of the officers, directors, partners, members, managers, or agents acting or purporting to act on its behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty, subject to any limitations on Guarantor's liability set forth in this Guaranty.

14. <u>Guarantor Information; Reporting to Credit Bureaus</u>. Guarantor authorizes Bank to verify or check any information given by Guarantor to Bank, check Guarantor's credit references, verify employment, and obtain credit reports. Guarantor shall provide such financial statements and other financial information about Guarantor as Bank may request from time to time. Guarantor agrees that Bank shall have the right at all times to disclose and report to credit reporting agencies and credit rating agencies such information pertaining to the Indebtedness and/or Guarantor as is consistent with Bank's policies and practices from time to time in effect. Guarantor acknowledges and agrees that the authorizations provided in this paragraph apply to any individual general partner of Guarantor and to Guarantor's spouse and any such general partner's spouse if Guarantor or such general partner is married and lives in a community property state.

15. <u>Change of Status</u>. Any Guarantor that is a business entity shall not enter into any consolidation, merger, or other combination unless Guarantor is the surviving business entity. Further, Guarantor shall not change its legal structure unless (a) Guarantor obtains the prior written consent of Bank and (b) all obligations of Guarantor under this Guaranty are assumed by the new business entity.

16. <u>Remedies</u>. If Guarantor fails to fulfill its duty to pay all Indebtedness guaranteed hereunder or shall breach or fail to comply with any term or provision of this Guaranty, Bank shall have all of the remedies of a creditor and, to the extent applicable, of a secured party, under all applicable law. Without limiting the foregoing to the extent permitted by law, Bank may, at its option and without notice or demand:

(a) declare any Indebtedness due and payable at once;

(b) take possession of any collateral pledged by Borrower or Guarantor, wherever located, and sell, resell, assign, transfer, and deliver all or any part of the collateral at any public or private sale or otherwise dispose of any or all of the collateral in its then condition, for cash or on credit or for future delivery, and in connection therewith Bank may impose reasonable conditions upon any such sale. Further, Bank, unless prohibited by law the provisions of which cannot be waived, may purchase all or any part of the collateral to be sold, free from and discharged of all trusts, claims, rights of redemption and equities of Borrower or Guarantor whatsoever. Guarantor acknowledges and agrees that the sale of any collateral through any nationally recognized broker-dealer, investment banker, or any other method common in the securities industry shall be deemed a commercially reasonable sale under the Uniform Commercial Code or any other equivalent statute or federal law, and expressly waives notice thereof except as provided in this Guaranty; and

(c) set off and apply any and all deposit accounts of Guarantor held by Bank or its affiliates against any and all obligations of Guarantor owing to Bank. The set-off may be made irrespective of whether or not Bank shall have made demand under this Guaranty, and although such obligations may be contingent or unmatured or denominated in a currency different from that of the applicable deposit accounts and without regard for the availability or adequacy of other collateral. If exercised by Bank, Bank shall be deemed to have exercised such right of setoff and to have made a charge against any such money immediately upon the occurrence of such default although made or entered on the books after such default.

17. <u>Notices</u>. All notices required under this Guaranty shall be personally delivered or sent by first

Ref #: 1002469890 : - M Shah Dental Inc.
Continuing and Unconditional Guaranty

class mail, postage prepaid, or by overnight courier, to the addresses on the signature page of this Guaranty, or sent by facsimile to the fax numbers listed on the signature page, or to such other addresses as Guarantor may specify from time to time in writing. Notices and other communications shall be effective (i) if mailed, upon the earlier of receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, (ii) if telecopied, when transmitted, or (iii) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered.

18. Successors and Assigns. This Guaranty (a) binds Guarantor and Guarantor's executors, administrators, successors, and assigns, provided that Guarantor may not assign its rights or obligations under this Guaranty without the prior written consent of Bank, and (b) inures to the benefit of Bank and Bank's indorsees, successors, and assigns. Bank may, without notice to Guarantor and without affecting Guarantor's obligations, sell participations in, or assign the Indebtedness and this Guaranty, in whole or in part and may exchange information about Guarantor to any actual or potential participants or assignees.

19. Amendments, Waivers, and Severability. No provision of this Guaranty may be amended or waived except in writing. No failure by Bank to exercise, and no delay in exercising, any of its rights, remedies, or powers shall operate as a waiver of such rights, remedies or powers, and no single or partial exercise of any such right, remedy, or power shall preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The unenforceability or invalidity of any provision of this Guaranty shall not affect the enforceability or validity of any other provision of this Guaranty.

20. Costs and Expenses. Guarantor agrees to pay all reasonable attorneys' fees and all other costs and expenses that may be incurred by Bank (a) in the enforcement of this Guaranty or (b) in the preservation, protection, or enforcement of any rights of Bank in any case commenced by or against Guarantor under the Bankruptcy Code (Title 11, United States Code) or any similar or successor statute.

21. Representations and Warranties. When Guarantor signs this Guaranty, and until the Indebtedness is repaid in full and any commitments or facilities provided by Bank with respect to the Indebtedness have been terminated, Guarantor makes the following representations and warranties:

(a) All financial and other information that has been or will be supplied to Bank is sufficiently complete to give Bank accurate knowledge of Guarantor's financial condition, including all material contingent liabilities. Since the date of the most recent financial statement provided to Bank, there has been no material adverse change in the business condition (financial or otherwise), operations, properties or prospects of Guarantor. If Guarantor is comprised of the trustees of a trust, the foregoing representations shall also pertain to the trustor(s) of the trust.

(b) There is no lawsuit, tax claim or other dispute pending or threatened against Guarantor which, if lost, would impair Guarantor's financial condition or ability to repay the Indebtedness, except as have been disclosed in writing to Bank.

(c) Guarantor is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation, except as have been disclosed in writing to Bank.

(d) Guarantor has no knowledge of any pending assessments or adjustments of its income tax for any year and all taxes due have been paid, except as have been disclosed in writing to Bank.

(e) There is no event which is, or with notice or lapse of time or both would be, a default by Guarantor under this Guaranty or under any other instrument or agreement executed in connection with the Indebtedness or this Guaranty.

(f) Guarantor will not be rendered insolvent by the execution, delivery, and performance of its obligations under this Guaranty.

(g)  Guarantor, if a natural person, has obtained any spousal or other consents or waivers which may be required by applicable law.

(h)  All collateral pledged by Guarantor to secure the Indebtedness or this Guaranty is owned by Guarantor free of any title defects or any liens or interests of others, except those which have been approved by Bank in writing.

22.  Governing Law.  Except to the extent that any law of the United States may apply, this Guaranty shall be governed and interpreted according to the laws of California (the "Governing Law State"), without regard to any choice of law, rules or principles to the contrary.  Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of Bank under federal law.

23.  Venue and Jurisdiction.  Guarantor agrees that any action or suit against Bank arising out of or relating to this Guaranty shall be filed in federal court or state court located in the Governing Law State.  Guarantor agrees that Bank shall not be deemed to have waived its rights to enforce this section by filing an action or suit against Guarantor in a venue outside of the Governing Law State.  If Bank does commence an action or suit arising out of or relating to this Guaranty, Guarantor agrees that the case may be filed in federal court or state court in the Governing Law State.  Bank reserves the right to commence an action or suit in any other jurisdiction where Borrower, any Guarantor, or any collateral has any presence or is located.  Guarantor consents to personal jurisdiction and venue in such forum selected by Bank and waives any right to contest jurisdiction and venue and the convenience of any such forum.  The provisions of this section are material inducements to Bank's acceptance of this Guaranty.

24.  Dispute Resolution Provision.  This paragraph, including the subparagraphs below, is referred to as the "Dispute Resolution Provision."  Bank and Guarantor (and any other party to this Guaranty) agree that this Dispute Resolution Provision is a material inducement for their entering into this Guaranty.

(a)  Scope.  This Dispute Resolution Provision concerns the resolution of any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses (collectively, a "Claim" or "Claims") between Bank, on the one hand, and Guarantor, on the other hand (each side being, for the purposes of this Dispute Resolution Provision, a "Party" and the two sides together being the "Parties"), regardless of whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Guaranty, including but not limited to Claims that arise out of or relate to: (i) this Guaranty (including any renewals, extensions or modifications); or (ii) any document related to this Guaranty.  For the purposes of this Dispute Resolution Provision only, the terms "Bank" or Party or Parties (to the extent referring to or including Bank) shall include any parent corporation, subsidiary or affiliate of Bank.

(b)  Judicial Reference.  Any Claim brought by any Party in a California state court shall be resolved by a general reference to a referee (or a panel of referees) as provided in California Code of Civil Procedure Section 638.  The referee (or presiding referee of the panel) shall be a retired Judge or Justice of the California state court system.  The referee(s) shall be selected by mutual written agreement of the parties.  If the parties do not agree, the referee(s) shall be selected by the Presiding Judge of the Court (or his or her representative) as provided in California Code of Civil Procedure Section 640.  The referee(s) shall hear and determine all issues relating to the Claim, whether of fact or of law, and shall do so in accordance with the laws of the Governing Law State and the California rules of evidence and civil procedure, and shall report a statement of decision.  The referee(s) shall be empowered to enter equitable as well as legal relief, provide all temporary or provisional remedies, enter equitable and legal orders that will be binding on the parties, and rule on any motion which would be authorized in court litigation, including without limitation motions to dismiss, for summary judgment, or for summary adjudication.  The referee(s) shall award legal fees and costs (including the fees of the referee(s)) relating to the judicial reference proceeding, and to any related litigation or arbitration, in accordance with the terms of this Guaranty.  The award that results from the decision of the referee(s) shall be entered as a

judgment in the court that appointed the referee(s), in accordance with the provisions of California Code of Civil Procedure Sections 644(a). Pursuant to California Code of Civil Procedure Sections 645, the parties reserve the right to seek appellate review of any judgment or order, including but not limited to, orders pertaining to class certification, to the same extent permitted in a court of law.

(c) <u>Arbitration Provisions</u>. The Parties agree that judicial reference pursuant to Subsection (b) above is the preferred method of dispute resolution of all Claims, when available. The Parties therefore agree that injunctive relief, including a temporary restraining order, without the posting of any bond or security, shall be appropriate to enjoin the prosecution of any arbitration proceeding where the Claims at issue become subject to (and as long as they remain subject to) judicial reference pursuant to Subsection (b) above, provided that a Party moves for such relief within thirty (30) days of its receipt of a demand for arbitration of a Claim. However, with respect to any Claim brought in a forum other than a California state court, or brought in a California state court but judicial reference pursuant to Subsection (b) above is not available or enforced by the court, the arbitration provisions in this Subsection (c) (collectively, the "Arbitration Provisions") shall apply to the Claim. In addition, if either of the Parties serves demand for arbitration of a Claim in accordance with these Arbitration Provisions, and the other Party does not move to enjoin the arbitration proceeding within thirty (30) days of receipt of the demand, the right to judicial reference shall be waived and the Claim shall remain subject to these Arbitration Provisions thereafter. The inclusion of these Arbitration Provisions in this Guaranty shall not otherwise be deemed as any limitation or waiver of the judicial reference provisions. The Arbitration Provisions are as follows:

(i) For any Claim for which these Arbitration Provisions apply (as defined in the immediately preceding paragraph), the Parties agree that at the request of any Party to this Guaranty, such Claim shall be resolved by binding arbitration. The Claims shall be governed by the laws of the Governing Law State without regard to its conflicts of law principles. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "Act"), shall apply to the construction, interpretation, and enforcement of these Arbitration Provisions, as well as to the confirmation of or appeal from any arbitration award.

(ii) Arbitration proceedings will be determined in accordance with the Act, the then-current Commercial Finance rules and procedures of the American Arbitration Association or any successor thereof ("AAA") (or any successor rules for arbitration of financial services disputes), and the terms of these Arbitration Provisions. In the event of any inconsistency, the terms of these Arbitration Provisions shall control. The arbitration shall be administered by the Parties and not the AAA and shall be conducted, unless otherwise required by law, at a location selected solely by Bank in any U.S. state where real or tangible personal property collateral for this credit is located or where Guarantor has a place of business. If there is no such state, Bank shall select a location in the Governing Law State.

(iii) If aggregate Claims are One Million Dollars ($1,000,000) or less:

(A) All issues shall be heard and determined by one neutral arbitrator. The arbitrator shall have experience with commercial financial services disputes and, if possible, prior judicial experience, and shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by Bank. If the AAA "Arbitrator Select: List and Appointment" process is unavailable, Bank shall initiate any successor process offered by the AAA or a similar process offered by any other nationally recognized alternative dispute resolution organization.

(B) Unless the arbitrator has a dispositive motion under advisement or unforeseeable and unavoidable conflicts arise (as determined by the arbitrator), all arbitration hearings shall commence within ninety (90) days of the appointment of the arbitrator, and under any circumstances the award of the arbitrator shall be issued within one hundred twenty (120) days of the appointment of the arbitrator.

(C) A Party shall be entitled to take no more than two (2) fact depositions, one or both of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

(D) There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed twenty (20) in number, including subparts. The requests shall be served within forty-five (45) days of the appointment of the arbitrator and shall be responded to within twenty-one (21) days of service.

(iv) If aggregate Claims exceed One Million Dollars ($1,000,000):

(A) The issues shall be heard and determined by one neutral arbitrator selected as above unless either Party requests that all issues be heard and determined by three (3) neutral arbitrators. In that event, each Party shall select an arbitrator with experience with commercial financial services disputes, and the two arbitrators shall select a third arbitrator, who shall have prior judicial experience. If the arbitrators cannot agree, the third arbitrator shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by Bank.

(B) Unless the arbitrator(s) have a dispositive motion under advisement or other good cause is shown (as determined by the arbitrator(s)), all arbitration hearings shall commence within one hundred twenty (120) days of the appointment of the arbitrator(s), and under any circumstances the award of the arbitrator(s) shall be issued within one hundred eighty (180) days of the appointment of the arbitrator(s).

(C) A Party shall be entitled to take no more than five (5) fact depositions, one or more of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

(D) There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed thirty (30) in number, including subparts. The requests shall be served within forty-five (45) days of the appointment of the arbitrator(s) and shall be responded to within twenty-one (21) days of service.

(v) Where a Party intends to rely upon the testimony of an expert on an issue for which the Party bears the burden of proof, the expert(s) must be disclosed within thirty (30) days following the appointment of the arbitrator(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B). The arbitrator(s) shall exclude any expert not disclosed strictly in accordance herewith. The other Party shall have the right within thirty (30) days thereafter to take the deposition of the expert(s) (upon payment of the expert's reasonable fees for the in-deposition time), and to identify rebuttal expert(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B).

(vi) The arbitrator(s) shall consider and rule on motions by the Parties to dismiss for failure to state a claim; to compel; and for summary judgment, in a manner substantially consistent with the corresponding Federal Rules of Civil Procedure. The arbitrator(s) shall enforce the "Apex" doctrine with regard to requested depositions of high-ranking executives of both Parties. The arbitrator(s) shall exclude any Claim not asserted within thirty (30) days following the demand for arbitration. This shall not prevent a Party from revising the calculation of damages on any existing theory. All discovery shall close at least one (1) week before any scheduled hearing date, and all hearing exhibits shall have been exchanged by the same

deadline or they shall not be given weight by the arbitrator(s).

(vii)  Except as waived by Guarantor in this Guaranty, the arbitrator(s) will give effect to applicable statutes of limitation in determining any Claim and shall dismiss the Claim if it is barred by the statutes of limitation.  For purposes of the application of any statutes of limitation, the service of a written demand for arbitration or counterclaim pursuant to the Notices provision of this Guaranty is the equivalent of the filing of a lawsuit.  At the request of any Party made at any time, including at confirmation of an award, the resolution of a statutes of limitation defense to any Claim shall be decided de novo by a court of competent jurisdiction rather than by the arbitrator(s).  Otherwise, any dispute concerning these Arbitration Provisions or whether a Claim is arbitrable shall be determined by the arbitrator(s), except as otherwise set forth in this Dispute Resolution Provision.

(viii)  The arbitrator(s) shall have the power to award legal fees and costs relating to the arbitration proceeding and any related litigation or arbitration, pursuant to the terms of this Guaranty.  The arbitrator(s) shall provide a written statement of reasons for the award.  The arbitration award may be submitted to any court having jurisdiction to be confirmed and have judgment entered and enforced.

(ix)  The filing of a court action is not intended to constitute a waiver of the right of any Party, including the suing Party, thereafter to require submittal of the Claims to arbitration, unless the Party fails to make such demand for arbitration within ninety (90) days following the filing of the court action.

(x)  The arbitration proceedings shall be private.  All documents, transcripts, and filings received by any Party shall not be disclosed by the recipient to any third parties other than attorneys, accountants, auditors, and financial advisors acting in the course of their representation, or as otherwise ordered by a court of competent jurisdiction.  Any award also shall be kept confidential, although this specific requirement shall be void once the award must be submitted to a court for enforcement.  The Parties agree that injunctive relief, including a temporary restraining order, from a trial court is the appropriate relief for breach of this paragraph, and they waive any security or the posting of a bond as a requirement for obtaining such relief.

(d)  Self-Help.  This Dispute Resolution Provision does not limit the right of any Party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(e)  Class Action Waiver.  Any arbitration or court trial (whether before a judge or jury or pursuant to judicial reference) of any Claim will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver").  THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.  Regardless of anything else in this Dispute Resolution Provision, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator.  The Parties to this Guaranty acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the Parties and is nonseverable from the agreement to arbitrate Claims.  If the Class Action Waiver is limited, voided or found unenforceable, then the Parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver.  THE PARTIES ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED.

(f)  Jury Waiver.  By agreeing to judicial reference or binding arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury as permitted by law in respect

of any Claim.  Furthermore, without intending in any way to limit the provisions hereof, to the extent any Claim is not submitted to judicial reference or arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury to the extent permitted by law in respect of such Claim.  This waiver of jury trial shall remain in effect even if the Class Action Waiver is limited, voided or found unenforceable. **WHETHER THE CLAIM IS DECIDED BY JUDICIAL REFERENCE, BY ARBITRATION, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS DISPUTE RESOLUTION PROVISION IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.  EACH PARTY HERETO (i) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS GUARANTY AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (iii) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

25.  Counterparts.  This Guaranty may be executed in as many counterparts as necessary or convenient, and by the different parties on separate counterparts each of which, when so executed, shall be deemed an original but all such counterparts shall constitute but one and the same agreement.  Delivery of an executed counterpart of this Guaranty (or of any agreement or document required by this Guaranty and any amendment to this Guaranty) by telecopy or other electronic imaging means shall be as effective as delivery of a manually executed counterpart of this Guaranty; provided, however, that the telecopy or other electronic image shall be promptly followed by an original if required by the Bank.

26.  Application of Singular and Plural.  In all cases where there is but a single Borrower, then all words used herein in the plural shall be deemed to have been used in the singular where the context and construction so require; and when there is more than one Borrower, or when this Guaranty is executed by more than one Guarantor, the word "Borrower" or "Borrowers" and the word "Guarantor" respectively shall mean all or any one or more of them as the context requires.

27.  Final Agreement.  This Agreement and any related security agreements or other agreements required by this Agreement constitute the entire agreement between Guarantor and Bank with respect to the subject matter of this Guaranty and with respect to the credit facilities provided by Bank to Borrower and supersede all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof. In the event of any conflict between this Agreement and any other agreements required by this Agreement, this Agreement will prevail.

Executed this February 2, 2017.

_____
Mihir Shah, Individually

**Mihir Shah DDS Inc.**

By: _____
    Mihir Shah, President

Address for notices to Bank:
Doc Retention Center
NC1-001-05-13
One Independence Center
101 North Tryon St
Charlotte, NC 28255-0001
Facsimile: (866) 255-9922


Address for notices to Guarantor:
Mihir Shah
29928 Muledeer Lane
Castaic, CA  913844

Mihir Shah DDS Inc.
29928 Muledeer Lane
Castaic, CA  91384


*Federal law requires Bank of America, N.A. (the "Bank") to provide the following two notices. The notices are not part of the foregoing agreement or instrument and may not be altered. Please read the notices carefully.*

*These notices apply only to individual Borrowers or Guarantors and individuals who are pledging collateral, granting a lien on real property or are otherwise obligated to the Bank (Obligors):*

### (1)    AFFILIATE SHARING NOTICE

From time to time the Bank may share information about the Obligor's experience with Bank of America Corporation (or any successor company) and its subsidiaries and affiliated companies (the "Affiliates"), including, but not limited to, the Bank of America Companies listed in notice #2 below.  The Bank may also share with the Affiliates credit-related information contained in any applications, from credit reports and information it may obtain about the Obligor from outside sources.

If the Obligor is an individual, the Obligor may instruct the Bank not to share this information with the Affiliates. The Obligor can make this election by (1) visiting the Bank online at bankofamerica.com/privacy or (2) calling the Bank toll-free at 888.341.5000.  To help the Bank complete the Obligor's request, the Obligor should include the Obligor's name, address, phone number, account number(s) and social security number.

If the Obligor makes this election, certain products or services may not be made available to the Obligor. This request will apply to information from applications, consumer reports and other outside sources only. Through the normal course of doing business, including servicing the Obligor's accounts and better serving the Obligor's financial needs, the Bank will continue to share transaction and account experience information, as well as other general information among the Affiliates.

**(2)    AFFILIATE MARKETING NOTICE – YOUR CHOICE TO LIMIT MARKETING**

- The Bank of America companies listed below are providing this notice #2.

- Federal law gives you the right to limit some but not all marketing from all the Bank of America affiliated companies. Federal law also requires us to give you this notice to tell you about your choice to limit marketing from all the Bank of America affiliated companies.

- You may limit all the Bank of America affiliated companies, such as the banking, loan, credit card, insurance and securities companies, from marketing their products or services to you based upon your personal information that they receive from other Bank of America companies. This information includes your income, your account history, and your credit score.

- Your choice to limit marketing offers from all the Bank of America affiliated companies will apply for at least 5 years from when you tell us your choice. Before your choice to limit marketing expires, you will receive a renewal notice that will allow you to continue to limit marketing offers from all the Bank of America affiliated companies for at least another 5 years.

- You may tell us your choice to limit marketing offers and you may tell us the choices for other customers who are joint account holders with you.

- This limitation will not apply in certain circumstances, such as when you have an account or service relationship with the Bank of America company that is marketing to you.

- For individuals with business purpose accounts, this limitation will only apply to marketing to individuals and not marketing to a business.

**To limit marketing offers, contact us at 888.341.5000**

**Bank of America Companies:**

This notice applies to all Bank of America entities that utilize the names:

Bank of America
Banc of America
U.S. Trust
Merrill Lynch

These entities include banks and trust companies; credit card companies; brokerage and investment companies; insurance and annuities companies; and real estate companies.

In addition, this notice applies to the following Bank of America companies:

Managed Account Advisors LLC
General Fidelity Life Insurance Company
NationsCredit Financial Services Corporation
BAL Corporate Aviation, LLC
BAL Energy Holding, LLC
BAL Energy Management II, LLC

Ref #: 1002469890 : - M Shah Dental Inc.
Continuing and Unconditional Guaranty

- 14 -

BAL Investment & Advisory, Inc.

# Exhibit 3

# Bank of America

**Universal Credit Application***

Send all information to:
Practice Solutions
600 N. Cleveland Ave. - Suite 300 - Westerville, OH 43082
Phone: 800.360.0669

**IMPORTANT:** Read these directions before completing section
• If you are applying for credit jointly, each applicant is required to submit a separate credit application with all sections complete.

**SECTION 1. REQUEST AMOUNT**

| | | | |
|---|---|---|---|
| Total amount requested $ | Business/Practice $ | Working Capital $ | Equipment/Improvements $ | Total 400,000 |
| Profession? Dentist | | Purpose of loan? | | |

**SECTION 2. PERSONAL AND BUSINESS INFORMATION**

| Personal Information: | Business Information: (If business is established) |
|---|---|
| Full Legal Individual Name: Hitler Shah | Legal Business Name: |
| Home Address: 11260 Paseo Del Cielo | Physical Business Address |
| Home Phone: | Cell: | Business Phone: 810-467-4125 | Preferred mailing address: Home  Business  Other (specify below) |
| Social Security #: | Business Tax ID (TIN / EIN): |
| Date of Birth: | Type of Business Practice: |
| Email Address: milr@ualex.edu | Indicate % of Ownership: % |
| Country of Citizenship? USA | Practice has been in existence for how long? |
| If not a US Citizen, INS Status: | Year Owner acquired/started business? |
| Prof. License#: 60858 License Date: 2017 | Organization Type: |
| Annual Income: 450,000 Source of Income**: Dentist | State of Organization: |
| Ever File Bankruptcy? ☐ Yes ☑ No | Date of Organization: | Number of Employees: |
| If yes, provide date of Bankruptcy. | Previous Year's Gross Revenue: | Net Profit: |
| Please list all business entities that you have ownership in: | | |
| Entity 1: | Entity 3: |
| Entity 2: | Entity 4: |

**SECTION 3 - Statement of Personal Financial Condition** as of (provide date) ___ , 20__

| ASSETS | in Dollars | LIABILITIES | Balance in Dollars | Monthly Payment |
|---|---|---|---|---|
| Cash on hand and in banks | 25,000 | Credit cards | $ 0 | $ |
| Assets held in Trust (list trust(s) below): | | Accounts Payable | | |
| | | Notes payable to Banks and Others (section 7) | | |
| | | Installment Account (auto) | | |
| Marketable Securities (stocks, bonds, mutual funds, etc.) | | | | |
| Pension, 401(k), IRA and/or other retirement plan | | | | |
| Restricted or control stocks (not liquid) | | | | |
| Accounts receivable, loans, and/or other notes you own | | | | |
| Life Insurance - cash surrender value | | Installment Account (student loans, etc.) | | |
| | | Loan on Life Insurance | | |
| Real estate owned (describe in section 5) | 612,000 | Mortgages on Real Estate (describe in section 5) | 582,000 | |
| Automobiles and other vehicles (present value) | | Unpaid Taxes (describe in section 8) | | |
| Other personal property (describe in section 6) | | Alimony, child support, or separate maintenance | | |
| Other assets (list below and describe in either section 4 or 6) | | Other liabilities (list below and describe in 9) | | |
| | | 1) | | |
| | | 2) | | |
| | | 3) | | |
| | | 4) | | |
| | | 5) | | |
| Total Assets | $ | Total Liabilities | $ | |
| | | Total Net Worth | $ | |

*All programs are subject to credit approval and loan amounts are subject to creditworthiness. Some restrictions may apply.
**Alimony, child support, or separate maintenance income need not be disclosed if you do not wish to have it as a consideration for repaying this obligation.

Applicant Initials

# REDACTED

## SECTION 4 - DETAILS OF DEPOSITS WITH BANKS, SAVINGS & LOANS AND OR CREDIT UNIONS (ETC)

| NAME OF INSTITUTION | TYPE OF ACCOUNT (personal, business, etc.) | TYPE OF DEPOSIT (checking, savings, etc.) | | ACCOUNT NUMBER (last 4 digits) | AMOUNT OF DEPOSIT |
|---|---|---|---|---|---|
| | | | # | | $ |
| | | | # | | $ |
| | | | # | | $ |
| | | | # | | $ |
| | | | # | | $ |

## SECTION 5 - REAL ESTATE OWNED (List each parcel separately. Use attachment if necessary. Each attachment must be identified as a part of this statement and signed)

| | Property A | Property B | Property C | Property D |
|---|---|---|---|---|
| Type of Property (Residence, Rental) | Condo | | | |
| Address | 11260 Rosas | del Cielo | Rwk CA | |
| Date Purchased | 11/15 | | | |
| Purchase Price | 512,000 | | | |
| Present Market Value | 560,000 | | | |
| Lien Holder/Bank | | | | |
| Mortgage Balance | | | | |
| Real Estate Taxes (if not escrowed) | | | | |
| Monthly Payment (Principal & Interest) | 3,800 | | | |
| Monthly Income (if leased) | | | | |

## SECTION 6 - OTHER PERSONAL PROPERTY AND OTHER ASSETS

## SECTION 7 - BUSINESS/PRACTICE NOTES PAYABLE TO BANKS AND OTHERS (DEBT SCHEDULE)

| Name of Institution/Note Holder | Original Date | Original Balance | Current Balance | Interest Rate | Payment | Frequency (monthly, etc) | Collateral |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SECTION 8 - UNPAID TAXES

| Tax Year and Amount in Dollars | Terms of Payment Plan if Applicable | Are Current Year's Taxes Paid? |
|---|---|---|
| 0 | | |

## SECTION 9 - OTHER LIABILITIES

### Consent & Disclosure

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person and entity opening an account. The information provided for this application will assist us in verifying your identity or the identity of your business. However, we may ask you to provide additional information or identifying documents for identity verification purposes. The person(s) signing below on behalf of the Applicant for loans or other credit from Bank of America, N.A., its agents, successors, affiliates and assignees (the "Bank"), certifies that he/she/it is the Applicant and/or has full authority to act on behalf of Applicant and that all information submitted in connection with this application for loans or other credit from the Bank is true and correct in all respects. The Bank (i) is authorized to verify any information provided in connection with this application, (ii) may obtain credit reports, including credit bureau reports and other information from third parties on any Applicant in connection with this application and also in the future in connection with periodic reviews, updates, renewals, extensions and collection activity for the loans or other credit granted as a result of this application, or any other such transaction requested by or granted to the Applicant by the Bank, and may use this application and credit report information to consider Applicant for other loan products that are suitable and which we may offer to the Applicant in conjunction with the loans or other credit being requested in this application, including, but not limited to: firm loans, lines of credit, and commercial/business credit cards (iii) at Applicant's request, will advise you of the foregoing requesting parties whether a credit report was obtained and, if so, the name and address of the reporting agency which provided it, (iv) may provide information about any loans or other credit granted hereunder to a credit reporting agency, and (v) may request financial statements and other information relating to the Applicant from time to time. Applicant agrees that Bank may obtain credit information from or share credit information with its agents, affiliates and assignees regarding Applicant (or their owner(s)) in considering this application.

NOTICE: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Service Commission administers compliance with this law.

Bank of America is a registered trademark of Bank of America Corporation.

Applicant Signature: _____     Date: 6/8/16